1  Brenton R. Babcock (SBN 162,120)
   Brent.Babcock@wbd-us.com
2  WOMBLE BOND DICKINSON (US) LLP
   3200 Park Center Drive, Suite 700
3  Costa Mesa, CA 92626
   Telephone: (714) 557-3800; Facsimile: (714) 557-3347
4
   John W. Cox, Ph.D. (*pro hac vice*)
5  John.Cox@wbd-us.com
   WOMBLE BOND DICKINSON (US) LLP
6  271 17th Street, NW, Suite 2400
   Atlanta, GA 30363
7  Telephone: (404) 888-7000; Facsimile: (404) 879-2699

8  *Attorneys for Plaintiffs*
   NUTRAMAX LABORATORIES, INC. and
9  NUTRAMAX LABORATORIES CONSUMER CARE, INC.

10              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11                    **SOUTHERN DIVISION**

12 | NUTRAMAX LABORATORIES, INC. and | Case No. 8:18-cv-02076 |

NUTRAMAX LABORATORIES, INC. and
NUTRAMAX LABORATORIES
CONSUMER CARE, INC.,

                    Plaintiffs,

        v.

BODY WISE INTERNATIONAL, INC.,

                    Defendant.

Case No. 8:18-cv-02076

**DECLARATION OF GRACE A. CORNBLATT IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BODY WISE INTERNATIONAL, INC.**

Concurrently filed with:
1. Notice of Motion and Motion for Default Judgment;
2. Memorandum of Points and Authorities;
3. Declaration of John W. Cox;
4. Proposed Order

Judge: Hon. David O. Carter
Motion Date: March 4, 2019

1

2      I, Grace A. Cornblatt, Ph.D., state as follows:

3      1.     I am a Director of the Translational Research Laboratory at

4   Nutramax Laboratories, Inc.

5      2.     I submit this declaration in support of Plaintiffs Nutramax

6   Laboratories and Nutramax Laboratories Consumer Care, Inc.'s (collectively,

7   "Nutramax" or "Plaintiffs") Motion for Default Judgment Against Defendant

8   Body Wise International, Inc. ("Defendant").

9      3.     I have reviewed U.S. Patent No. 6,797,289 ("the '289 patent"),

10  which I understand is a pleading in this action labeled D.I. 1-1.

11     4.     I have reviewed U.S. Patent No. 8,753,697 ("the '679 patent"),

12  which I understand is a pleading in this action labeled D.I. 1-2.

13     5.     I have reviewed documents related to a product labeled "Joint

14  Complete" including documents that I understand are pleadings in this action

15  labeled D.I. 1-3, D.I. 1-4, and D.I. 1-5.

16     6.     I have reviewed a Declaration of Carmelita Frondoza signed on

17  May 16, 2013, which I understand is a document that was submitted during the

18  application process for the '697 patent.

19     7.     I have reviewed a chart with headings labeled U.S. Patent No.

20  6,797,289, U.S. Patent No. 8,753,697, Claim, Proposed Construction,

21

22                                    -1-

Construction Support, and Infringement Support, which I understand is Exhibit A to a document with the title Memorandum of Points and Authorities in Support of Plaintiffs Nutramax Laboratories and Nutramax Laboratories Consumer Care, Inc.'s Motion for Default Judgment Against Defendant Body Wise International, Inc. ("Chart A").

8.    I understand that Nutramax contends that the phrase "wherein the ASU and the glycosaminoglycan are present in a synergistically effective amount" found in at least claim 1 of the '697 patent means "a combination of ASU and glycosaminoglycan wherein the amounts of components have or produce a greater than additive effect."  In view of my review of the documents cited herein and my education and experience, I agree with this proposed meaning.

9.    Therefore, I conclude that Joint Complete includes ASU and a glycosaminoglycan in a synergistically effective amount as described and claimed in the '697 patent.

10.    I understand that claim 21 of the '697 patent reads "A method of treating or repairing damage to connective tissue in humans and animals comprising administering a composition according to claim 1 to a human or animal in need thereof."

11.    In view of my review of the documents indicated above in ¶¶ 4-7, as well as the plain and ordinary meanings of the terms in claim 21 as described in Chart A (*see* ¶ 8, above), I find that Joint Complete is designed for use in a method of treating or repairing connective tissue in humans wherein the method includes administering units of Joint Complete to a human.  Specifically, as shown in D.I. 1-5, the Joint Complete "Supplement Facts" instructs the user—a human in need of Joint Complete—to take a serving of 3 tablets of Joint Complete, which is promoted for "support and relief for painful knees, aching backs and sore shoulders," "for joints and connective tissue," to "lubricate and cushion[ing] joints," to "benefit join[t] health," and to "provide soothing relief for tired, aching joints" (*see* D.I. 1-4 at page 1/6).

12.    I understand that Nutramax contends that the term "a synergistic combination of an aminosugar and [ASU]" found in at least claim 1 of the '289 patent means "a combination of aminosugar and ASU wherein the amounts of components have or produce a greater than additive effect."  In view of my review of the documents cited herein and my education and experience, I agree with this proposed meaning.

13.    For the same reasons indicated above supporting my conclusion that Joint Complete includes ASU and a glycosaminoglycan present in a synergistically effective amount (*see* ¶ 10, above), I conclude that Joint

Complete includes a synergistic combination of aminosugar and ASU (*i.e.*, a combination of aminosugar and ASU wherein the amounts of components have or produce a greater than additive effect) as described and claimed in the '289 patent.

14.     I reserve the right to provide additional information regarding the claims of the '289 patent or the '679 patent, the terms therein, Joint Complete, or any assessment or comments on the information provided above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed on January 28, 2019, in Edgewood, Maryland.

By: /s/ *Grace A. Cornblatt*
Grace A. Cornblatt, Ph.D.

-4-